```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| FRANK MARENBACH and DEBRA MCKIBBIN, | |
| Plaintiffs, | CIVIL NO. 11-3832(NLH)(AMD) |
| v. | **OPINION** |
| CITY OF MARGATE, | |
| Defendant. | |

**Appearances**:

GERARD J. JACKSON
1500 NORTH KINGS HIGHWAY
SUITE 205
CHERRY HILL, NJ 08034
   On behalf of plaintiffs

ROBERT P. MERENICH
GEMMEL, TODD & MERENICH, P.A.
767 SHORE ROAD
P.O. BOX 296
LINWOOD, NJ 08221
   On behalf of defendant

**HILLMAN**, District Judge

   This case concerns plaintiffs' claims that they suffered damages as a result of plaintiff Frank Marenbach's fall on the street in Margate City, New Jersey. Presently before the Court is defendant's motion for summary judgment, as well as defendant's request for sanctions against plaintiffs. For the reasons expressed below, defendant's summary judgment motion will be granted, and defendant's request for sanctions shall be denied without prejudice.

**BACKGROUND**

On July 4, 2009, plaintiff Frank Marenbach tripped and fell in the street on Ventnor Avenue in Margate City, New Jersey. Plaintiff claims that he severely and permanently injured his left ankle, and that his injury has required surgery. Plaintiff claims that Margate City controls Ventnor Avenue, and is liable for failing to protect him from a dangerous condition. Plaintiff's wife, Debra McKibbin, has filed a claim for loss of consortium.

Defendant Margate City (hereinafter "Margate") has moved for summary judgment in its favor on plaintiffs' claims because plaintiffs failed to properly comply with the New Jersey Tort Claims Act, and because it does not own or control Ventnor Avenue. Margate has also moved for attorney's fees and costs pursuant to New Jersey's Frivolous Litigation statute because plaintiffs know that Atlantic County, and not Margate, owns and controls Ventnor Avenue. Plaintiffs have opposed Margate's motion on all bases.

**DISCUSSION**

**A.   Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**B.   Summary Judgment Standard**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions,

2

documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific

facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C.   Analysis**

    **1.   Margate's Motion for Summary Judgment**

As a threshold matter, in order to maintain their suit against Margate, plaintiffs must comply with New Jersey's Tort Claim Act ("NJTCA").  The NJTCA provides, "No action shall be brought against a public entity or public employee under this Act unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this chapter."  N.J.S.A. 59:8-3.  A tort claim notice "must be served upon the public entity within 90 days of the accrual of the claim, and failure to do so will forever bar the claimant from recovering against a public entity or public employee."  N.J.S.A. 59:8-8.  The accrual date under the NJTCA is generally the date on which the alleged tort is committed.  Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000).

When prior counsel for plaintiffs attempted to comply with the notice requirements of the NJTCA in 2009, the matter was brought before the New Jersey Superior Court Appellate Division, which issued an opinion detailing the procedural history of the

4

case. Because the procedural history of the case is directly relevant to the resolution of Margate's motion, the relevant portion of the Appellate Division's opinion will be restated here:

> According to his submissions, plaintiff, a vacationer from Pennsylvania, tripped and fell on the pavement on Ventnor Avenue in Margate on July 4, 2009. The fall apparently occurred on the east side of Ventnor Avenue at its intersection with Jefferson Street, a short distance from the curb. Plaintiff contends that the street location was in a dangerous condition. As a result of his fall, plaintiff injured his ankle and received medical treatment.
> Plaintiff retained an attorney licensed in Pennsylvania to pursue recovery for his personal injuries. On September 30, 2009, the Pennsylvania attorney served a notice of tort claim upon the City of Margate ("City"), mistakenly assuming that the City was responsible for maintaining Ventnor Avenue. The notice was served upon the City within the ninety days prescribed by N.J.S.A. 59:8-8. The only other public entity that plaintiff apparently served with a notice was the State Department of Transportation.
> The City's claims administrator, Scibal Associates, Inc. ("Scibal"), investigated plaintiff's claim and denied liability, advising him that he had served the wrong public entity. In a letter to plaintiff's Pennsylvania attorney dated January 14, 2010, Scibal advised him that the City has "no ownership, control and/or responsibility" over Ventnor Avenue. The letter further stated that the public entity "responsible for Ventnor Avenue is the County of Atlantic." In fact, Ventnor Avenue is officially designated as Atlantic County Road 629.
> Plaintiff ultimately filed a tort claims notice with Atlantic County on February 2, 2010, almost seven months after his accident. The County denied liability because the notice was untimely. Plaintiff then filed a motion in the Law Division seeking leave to file a late notice, arguing that extraordinary circumstances warranted such relief.
> Plaintiff supported his request with an affidavit from his Pennsylvania attorney. The attorney asserted that he was personally familiar with Ventnor Avenue

> where it passes through Margate, noting that he owns property nearby in Atlantic City and has driven on Ventnor Avenue on numerous occasions. Despite his asserted familiarity with the road, the attorney claimed that he had never previously observed signs indicating that Ventnor Avenue is a County highway. He alleged that he had "no reasonable means of knowing," during the statutory ninety-day notice period, that Ventnor Avenue is a County highway.
>
> The County opposed plaintiff's motion and his contention of extraordinary circumstances. It reiterated that Ventnor Avenue is a County road, and refuted the contention of plaintiff's Pennsylvania attorney that the street is not clearly marked as such. As corroboration, the County submitted photographs of standard, pentagonal-shaped signs posted in Margate, indicating "Atlantic County 629." According to the County's submission, such a sign is posted on one of the main thoroughfares into and out of the City, as well as at the intersection of Jasper and Ventnor Avenue eastbound.
>
> The County also argued that it would be substantially prejudiced if the court granted plaintiff leave to file a late claim concerning his July 2009 accident. It noted that the exact location of plaintiff's fall, and the specific nature of the alleged dangerous condition in the roadway, were still unclear more than a year after the accident. In the meantime, the road's condition could have been altered by weather, repairs, or maintenance activities.
>
> Upon considering these arguments and submissions, Judge Nelson Johnson denied plaintiff's motion. In his oral opinion, the judge concluded that plaintiff "clearly was chargeable with knowing that this [roadway] was a County highway, failed to bring the notice before the County within the [statutorily-required] 90 days, [and] failed to move [to file a late claim] until many months afterwards[.]"

Marenbach v. County of Atlantic, 2001 WL 1675270, 1-2 (N.J. Super. Ct. App. Div. May 5, 2011).  The Appellate Division upheld the lower court's decision, explaining, "The failure of plaintiff and his Pennsylvania attorney to appreciate that Ventnor Avenue is a County road until almost seven months after the accident does not

6

amount to 'extraordinary circumstances.' The street is plainly marked as a County road by signs posted within the City of Margate.  Moreover, plaintiff offers no reason why he could not have easily ascertained the road's status by consulting a map or an internet site, or through other diligent inquiry, within the ninety-day deadline." Id. at *2.  The Appellate Division also found that "the delay in providing notification to the County is consequential.  It is entirely conceivable that the condition of the street had changed from the time of plaintiff's summer mishap on the Fourth of July to the time of his service of notice upon the County the following winter." Id.

This recitation of plaintiffs' attempts to sue Atlantic County for his injury is directly relevant to plaintiffs' case here because plaintiffs are back where they started, again attempting to hold Margate liable for the alleged dangerous condition of Ventnor Avenue.  Margate argues, among other things, that plaintiffs should not be able to do so because (1) plaintiffs failed to comply with the NJTCA by not completing a required 17-page Tort Claims Questionnaire, which Margate sent to plaintiffs' former counsel twice, on October 5, 2009 and November 3, 2009, and which requested detailed information about the exact location of the accident and resulting injuries, (2) Ventnor Avenue is not "owned or controlled by" by Margate, and (3) plaintiffs have not demonstrated that Margate had constructive knowledge of the

7

alleged dangerous condition on Ventnor Avenue.

Plaintiffs respond that Margate should be estopped from arguing about their non-compliance with the questionnaire because even if they answered the questions, Margate's position from the beginning was that it was not responsible for plaintiffs' injuries, so the issue of their failure to complete the questionnaire is irrelevant.  Plaintiffs further argue that even though they concede that Margate does not own Ventnor Avenue, it is a disputed fact as to whether Margate "controlled" Ventnor Avenue such that it can be held liable for plaintiffs' injuries sustained as a result of the dangerous condition.  Plaintiffs also contend that a jury must decide whether Margate had constructive knowledge of the dangerous condition.[1]

Considering the "guiding principle" that "immunity from tort liability is the general rule and liability is the exception" for public entities, see Polzo v. County of Essex, 960 A.2d 375, 380-

---

[1] The Court notes that plaintiffs did not file a response to Margate's statement of material facts not in dispute, and they did not provide their own statement of material facts not in dispute.  Under Local Civil Rule 56.1, "The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."  The Court does not base its decision on the application of this rule, although the acceptance of Margate's statement of facts as undisputed further supports the grant of summary judgment in Margate's favor.

8

81 (N.J. 2008) (citations omitted), plaintiffs cannot survive Margate's summary judgment motion.  Even accepting as true plaintiffs' argument that their failure to complete the Tort Claims Questionnaire does not invalidate their notice to Margate under the NJTCA, plaintiffs cannot demonstrate disputed material facts regarding Margate's "control" over Ventnor Avenue or Margate's constructive knowledge of the alleged dangerous condition.

> **a.  *Plaintiffs cannot establish that Margate "controls" Ventnor Avenue***

The NJTCA defines "public property" as property that is "owned or controlled by the public entity."  N.J.S.A. 59:4-1c.  Regulatory control is insufficient to establish control within the meaning of the Act.  Posey v. Bordentown Sewerage Authority, 793 A.2d 607, 614 (N.J. 2002) (citations omitted).  Constructive or joint-constructive possession, however, may be sufficient.  Id.  Constructive possession is based on an entity's "conduct with regard to the item in question," and "there is a considerable degree of latitude within which courts may . . . . expand the legal fiction of constructive possession in order to achieve the ends of justice."  Id. (citations omitted).

For example, in Posey, the New Jersey Supreme Court was tasked for the first time to address the NJTCA's meaning of "control."  There, the court held "that possessory control is satisfied where a public entity treats private property as its own

9

by using it for public purposes." Id. (explaining that the public entities treated the pond as if they owned it by using it for storm-water drainage and by maintaining at least some of the adjacent land, thus making it an integral part of the property of the public entities).

In contrast, in Dickson v. Township of Hamilton, 946 A.2d 617, 622 (N.J. Super. Ct. App. Div. 2008), the plaintiff was injured on Route 322 when her car hit black ice, slid off the road and hit a tree. Plaintiff claimed that a dangerous roadway condition on Route 322 caused her accident. She sued both Hamilton Township and the State of New Jersey. The State owned Route 322, but plaintiff claimed that the Township could be held liable for "controlling" it because the Township's police department exercised law enforcement responsibilities over the portion of Route 322 where the accident occurred.

The court found that the Township could not be attributed with control over the stretch of Route 322 within its territorial boundaries because the Township's protective police patrol of the highway did not establish its "control" of the State road. Dickson, 946 A.2d at 622 (citation omitted). The Court noted, "Nothing in the legislative history [of the Act] suggests that a public entity is liable for injuries sustained by virtue of a dangerous condition existing on the property of another," and absent "possessory control consistent with property law," the

10

Township's actions did not evidence a basis for liability under the "own or control" section of the NJTCA.  Id. (citing Posey, 793 A.2d at 614) (other citations omitted).

Here, plaintiffs rely on the following evidence to prove their position that Margate has possessory control over Ventnor Avenue: (1) Atlantic County pays Margate to remove snow and clean Ventnor Avenue; and (2) Margate police officers patrol the street and enforce parking and moving violations on Ventnor Avenue, and Margate splits the fees from those activities with Atlantic County.

This evidence is insufficient to establish that Margate has possessory control over Ventnor Avenue to hold it liable for plaintiffs' injuries.  With regard to the Margate police activity on Ventnor Avenue, Dickson v. Township of Hamilton, 946 A.2d 617, 622 (N.J. Super. Ct. App. Div. 2008), cert. denied, 957 A.2d 1170 (N.J. 2008), discussed above, squarely rejects plaintiffs' argument that protective police patrol of the street establishes Margate's "control" of the County road.

The fact that Atlantic County pays Margate to remove snow from Ventnor Avenue and perform weekly street cleaning services on Ventnor Avenue is also insufficient to establish "control" under the circumstances of this case.  Although the process of snow removal and street cleaning may contribute to a deteriorated condition of the street, there is no evidence that Margate

11

regularly inspected the condition of the street, or that it was responsible for repairing the condition of the road that may have been affected by its snow removal and cleaning activities.

Moreover, even if Margate were under contract with Atlantic County to regularly inspect the condition of the road and make repairs to prevent dangerous conditions on it, it is questionable whether that would cause Margate to have a possessory interest in Ventnor Avenue such that it could be liable under the NJTCA. Indeed, N.J.S.A. 27:16-6 provides, "The duty of maintaining and keeping in repair every road so laid out and opened, taken over, or acquired, shall devolve exclusively upon the board of chosen freeholders [the County], and all other duties and all powers respecting such road shall be imposed upon and be vested in it." Those duties of the County include, "Improve, pave, repave, surface or resurface, repair and maintain any road or highway under its control, either in whole or in part." N.J.S.A. 27:16-1. Just as a privately owned company that was under contract with Atlantic County to maintain Ventnor Avenue would not obtain a possessory interest in Ventnor Avenue to make it a concurrent owner with Atlantic County, the same would most likely be true for another public entity.

Regardless of any hypothetical maintenance contract, in this case, where the only evidence of Margate's alleged possessory control of Ventnor Avenue is its agreement with Atlantic County to

12

clean and remove snow off of Atlantic County's road, plaintiffs cannot establish that Margate "controls" Ventnor Avenue to make it liable for plaintiffs' injuries under N.J.S.A. 59:4-1c.

      **b.** ***Plaintiffs cannot establish that Margate had actual or constructive notice of the alleged dangerous condition***

Even if plaintiffs could demonstrate that Margate "controls" Ventnor Avenue, they have not provided sufficient evidence that Margate had "actual or constructive notice of the dangerous condition" on Ventnor Avenue. To hold a public entity liable for a plaintiff's injuries on its property, the NJTCA requires that a plaintiff must show, among other things, that (1) the property was in dangerous condition at the time of the injury, (2) that the injury was proximately caused by the dangerous condition, (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that (4) the public entity had actual or constructive notice of the dangerous condition under section 59:4-3 for a sufficient time prior to the injury to have taken measures to protect against the dangerous condition. N.J.S.A. 59:4-2.

In order to show that Margate had constructive notice of the dangerous condition of Ventnor Avenue that purportedly caused Marenbach's fall, plaintiffs argue that a jury could infer the size and depth of the defect from six photographs taken of the street. Plaintiffs further argue that a jury could infer that in

13

order for that defect to get to that size and depth, the defect would have had to have been there for some time before the accident.[2]

Plaintiffs' photographs are insufficient to meet their burden for several reasons. One reason is that the photographs appear to lack clarity of the defect so that a jury could not determine the defect's size and depth.[3] Aside from the quality of the pictures, however, the main reason these photographs are unpersuasive to demonstrate Margate's constructive knowledge of the defect is because plaintiffs do not provide any certification attesting to when these photographs were taken, or by whom.[4] The date stamp on two of the photos is "1/21/2006," while the other four are undated. It would be impossible for any jury to determine whether Margate should have been aware of a defect in the street on July

---

[2] Plaintiffs also argue that because Margate's chief financial officer, Lisa McLaughlin, testified that Margate had a program to patrol and inspect for potholes, it could be found that Margate had actual or constructive knowledge of the defect on Ventnor Avenue. As plaintiffs are aware, however, Ms. McLaughlin testified that she did not know whether Ventnor Avenue was part of that program.

[3] The Court was only provided with photocopies of the photographs, but even acknowledging that the original photographs are more clear than photocopies of them, it does not seem to the Court that the original photographs would sufficiently depict the size and depth of the defect as argued by plaintiffs.

[4] Plaintiffs do not attach these photographs as exhibits to their motion, but rather refer to Margate's motion papers, which include these photographs as exhibits to its motion.

4, 2009 when the date of these photographs is unknown.[5]

Consequently, because plaintiffs provide insufficient evidence to demonstrate Margate's actual or constructive knowledge about the alleged dangerous condition on Ventnor Avenue, in addition to their inability to demonstrate that Margate controls Ventnor Avenue, Margate is entitled to summary judgment on all of plaintiffs' claims.

### 2. **Margate's Request for Sanctions**

Margate seeks attorneys fees and costs from plaintiffs pursuant to the New Jersey Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1, which is typically brought in state court pursuant to N.J. Ct. R. 1:4-8, and is "patterned after Rule 11 of the Federal Rules of Civil Procedure." Thorner v. Sony Computer Entertainment America Inc., 2010 WL 904797, 2 (D.N.J. 2010) (citing Sjogren, Inc. v. Caterina Ins. Agency, 582 A.2d 841 (N.J. Ch. Div. 1990)). These provisions proscribe the filing of a claim pursued in bad faith, for harassment, or unnecessary delay, and they require certain procedural steps to be taken in order for a court to consider the application, such as a "safe harbor" letter sent to the offending party prior to the application for sanctions. See,

---

[5] It appears to the Court that these photos were taken at different times. Three of the photographs show a restaurant chalkboard menu sign in the crosswalk, and one of those photos shows a tree with foliage. One undated photo, and the two photographs date stamped "1/21/2006," do not show the restaurant menu sign, and two appear to show a tree with no leaves.

15

e.g., Fed. R. Civ. P. 11(c); N.J. Ct. R. 1:4-8.

In this case, Margate twice warned plaintiffs' counsel--once to plaintiffs' former counsel in January 2010 and again to plaintiffs' current counsel in November 2011--that pursuing claims against Margate was frivolous because Margate does not own or control Ventnor Avenue, and because plaintiffs never certified that they met the mandatory $3600 treatment minimum requirement under the NJTCA. Margate argues that in addition to warning plaintiffs about their frivolous pursuit of claims against Margate, plaintiffs demonstrated their awareness that Margate was the wrong party to pursue when they spent more than a year attempting to litigate their claims against Atlantic County. Plaintiffs, however, strenuously contest that their pursuit of claims against Margate has been frivolous, and they contend that their attempts to navigate the complicated NJTCA have not been motivated by harassment or bad faith.

The requirements of the provisions imposing sanctions must be strictly construed. See DeBrango v. Summit Bancorp, 745 A.2d 561, 565 (N.J. Super. Ct. App. Div. 2000) (explaining that the frivolous litigation statute must be interpreted restrictively); Balthazar v. Atlantic City Medical Center, 137 Fed. Appx. 482, 490, 2005 WL 1473901, *8 (3d Cir. 2005) (quoting Fed. R. Civ. P. 11(c)(4)) (explaining that the appropriate sanction must be limited to one "sufficient to deter repetition of such conduct or

16

comparable conduct by others similarly situated"). One requirement of the sanctions provisions is that the party seeking sanctions must file an independent motion or application, separate from any substantive motion that party files. See N.J.S.A 2A:15-59.1 ("A party . . . seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit."); Greenblatt v. Sulovski, 2010 WL 4007653, 2 (N.J. Super. Ct. App. Div. 2010) (citing N.J. Ct. R. 1:4-8(b)(1) ("An application for sanctions under this rule shall be by motion made separately from other applications and shall describe the specific conduct alleged to have violated this rule.") and explaining that the trial court denied defendant's request for counsel fees pursuant to the New Jersey Frivolous Litigation Statute because they had not filed a separate motion for counsel fees); Fed. R. Civ. P. 11 ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).").

Margate makes its request for attorney's fees and costs pursuant to the New Jersey Frivolous Litigation Statute as a part of its motion for summary judgment. This is procedurally improper. Should Margate wish to pursue its request for attorney's fees and costs, it should do so in accordance with the

17

proper procedure set forth by the rules.[6]

## CONCLUSION

For the reasons expressed above, defendant's motion for summary judgment shall be granted, and defendant's request for sanctions shall be denied without prejudice. An appropriate Order will be entered.

Date: April 29, 2013        s/ Noel L. Hillman  
At Camden, New Jersey       NOEL L. HILLMAN, U.S.D.J.

---

[6] Plaintiffs filed their complaint in this Court under diversity jurisdiction, 28 U.S.C. § 1332. Plaintiffs' claims arise solely under New Jersey state law. Even though the federal rules provide for sanctions similar to those requested by Margate, Margate has sought sanctions under a New Jersey statute. Because Margate's request for counsel fees and costs will be denied without prejudice, the Court takes no position on whether Margate should be proceeding under Rule 11 or N.J.S.A. 2A:15-59.1, other than to note that either avenue may be proper. See U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 393 (3d Cir. 2002) (explaining that "under the Rules Enabling Act, 28 U.S.C. § 2072(b), procedural rules may not supplant substantive rights but the line between procedure and substance is notoriously difficult to draw . . . . Our review of extant case law persuades us that the Federal Rules of Civil Procedure do not preempt claims for abuse of process and similar torts providing relief for misconduct in federal litigation. Therefore, victims of such misconduct may, in appropriate circumstances, bring suit to recover damages under state causes of action").